## HOUSTON OIL CO. OF TEXAS v. JONES et al. (No. 46.)*

(Court of Civil Appeals of Texas. Beaumont. Jan. 13, 1916. On Motion for Rehearing, March 16, 1916.)

1. ADVERSE POSSESSION ⬤➞114(1)—EVIDENCE —SUFFICIENCY.

In an action to recover an undivided half interest in a tract of land on the ground that plaintiffs had acquired title by adverse claim and occupancy, evidence *held* sufficient to support a verdict for plaintiffs.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683; Dec. Dig. ⬤➞ 114(1).]

---

⬤➞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

**2. APPEAL AND ERROR ☞1001(1)—FINDING—REVIEW.**

Where in such action there was conflicting evidence as to whether there had been a break in the continuity of plaintiff's possession, a finding of the jury that there had been a ten years' continuous possession, which was supported by competent testimony, will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3928–3933; Dec. Dig. ☞ 1001(1).]

**3. APPEAL AND ERROR ☞1060(3)—HARMLESS ERROR—STATEMENT TO JURY.**

Where in such action plaintiff's counsel was permitted to state to the jury that the statute of limitations was suspended during the time of such alleged break of continuity, such action of the court was harmless error, where the jury on competent testimony found a ten years' continuous possession after such alleged break, and there was nothing in the record to indicate any bias on the part of the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ☞ 1060(3).]

**4. APPEAL AND ERROR ☞1051(1)—HARMLESS ERROR—ADMISSION OF TESTIMONY ON FORMER TRIAL.**

The admission on the second trial of such action of the evidence given by a witness on the previous trial, where he had been fully cross-examined, was not prejudicial error, where such witness was physically unable to attend court or answer interrogatories, and there was no indication that he was to be attacked as a witness by impeachment, and there was abundant evidence to support the finding of the jury without his testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161, 4162, 4165, 4166; Dec. Dig. ☞1051(1).]

**5. TRIAL ☞133(2) — CONDUCT OF COUNSEL — STATEMENT TO JURY.**

Where plaintiffs' counsel in his opening argument stated to the jury, in effect, that the plaintiffs could not scour the county for witnesses as the defendant, being a corporation, had done for the purpose of finding witnesses to bolster up an unjust claim, and the trial court ruled that the statement was improper and withdrew it from the jury, with the instruction not to consider it, there was no ground for reversal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. ☞133(2).]

Appeal from District Court, Newton County; A. E. Davis, Judge.

Action by H. C. Jones and others against the Houston Oil Company of Texas. Judgment for plaintiffs, and defendant appeals. Affirmed. Motion for rehearing overruled.

See, also, 161 S. W. 92.

Parker & Kennerly and Fred L. Williams, of Houston, for appellant. John B. Warren, of Houston, for appellees.

MIDDLEBROOK, J. Appellees, heirs of Mrs. D. M. Jones, deceased, instituted this suit in the district court of Newton county, Tex., for the recovery of a one-half undivided interest in 160 acres of land, a part of the Nathaniel Cochran survey in said county. The land was occupied first by appellees' father and mother during the marital relation. After the death of Mrs. D. M. Jones the Houston Oil Company instituted suit against D. M. Jones for the land, and secured a judgment against him, but the heirs of Mrs. D. M. Jones, deceased, were not made parties to the suit. They claimed the land under the ten-year statute of limitation. An agreement is of record which shows the title in appellant, Houston Oil Company, unless it is divested of such title by virtue of plaintiffs' plea of limitation and the facts supporting the plea. The case was tried with a jury, resulting in a verdict and judgment for the appellees for 80 acres, being the land sued for; and the case is properly before this court on appeal. There is conflicting testimony as to the ten years' adverse occupancy as pleaded by the plaintiffs, and the evidence is voluminous; but for a full understanding of the case it is not necessary to set out the facts in full.

D. M. Jones testified upon the issue of limitation as follows:

"I first moved on the land that I now live on in the fall of 1865. * * * When I moved on the land, I built a log house 18 feet square, on the south end of this 18-foot room a room 8x18 feet, and on the west an open gallery. On the east side of the 18-foot room was a kitchen, built of split boards, 8 feet wide and 18 feet long. I had a log smokehouse 12x18 feet built near the residence. I had a corncrib built of logs, about 12x16 feet. I also had a double log house stable for horses about 12 feet square. I cleared 8 acres about 300 yards southwest from the house the first year I moved there. This was done in the fall of 1865 and the spring of 1866. I cleared 4 acres adjoining the 8 acres above mentioned on the south side in the fall of 1866 and the spring of 1867. I also cleared patches about the house and cow penned them to the extent of about 4 acres. The clearing extended over a period of three or four years, beginning with the year 1865. I lived on the place with my family continuously for a period of 12 years from the time I originally moved on it. Then Mrs. Tade, an aunt of mine, moved on the place, and occupied the same as my tenant continuously for a period of about five years. During this period of five years I was living about 1½ miles southwest from the land, but I used and cultivated the land in question each and every year during the time. I cultivated them continuously each year until 1889. I made a crop that year on the place. The land was not further occupied by me until about the year 1902. I moved on it in March, 1902. I have lived there continuously since 1902. I cultivated the land which was cleared above mentioned each year I was on the place and the five years Mrs. Tade occupied it."

There is testimony that D. M. Jones sold his improvements on the land to one W. H. Simmons about the year 1870. D. M. Jones denied such sale, and said the improvements he sold to Simmons were not on the land in controversy. One Biscamp testified that his father bought some oxen from D. M. Jones, and that he understood that Jones got the oxen from Simmons for the improvements "on that old place over there."

H. C. Jones, son of D. M. Jones, and one of the plaintiffs in this case, testified that his father was mistaken in saying he cultivated the place ten or twelve years from 1865, and that he does not remember how

long Mrs. Tabe lived on the land, but does not remember her being there more than six to ten months. H. C. Jones was born in 1858. He also testified that he was at home and knew of its being cultivated until 1878, and he then left home. He helped to cultivate the land till 1878.

A number of witnesses not related to the parties testified positively of Jones' occupation and tilling of the land up to 1882. There. is testimony in conflict with the testimony that D. M. Jones occupied and cultivated the land from 1865 to 1882, some of the witnesses testifying that they saw the place in 1878, and it was not in cultivation then; but there is abundant testimony that D. M. Jones did occupy, claim, and cultivate the land from 1865 to 1882. D. M. Jones at the trial of the suit lived upon the land with his son, H. C. Jones.

[1] Appellant's first assignment of error is to the effect that the verdict of the jury and the judgment of the court are not supported by the evidence, because plaintiffs failed to establish adverse claim and occupancy and use of the land described in their petition to the metes and bounds thereof at any time or for a sufficient time to mature their title as pleaded.

Plaintiffs' prayer is for one-half of the 160 acres of land mentioned above, which is described by metes and bounds, alleging the survey of the land in 1872. They allege that they always understood the survey to contain 160 acres, but plead in the alternative that, if more land is included in the field notes than 160 acres, then they ask that such excess be taken off so as to leave to them their improvements, and that such excess, if any, be taken off of the north side of the tract.

The judgment shows an agreement between the parties that the field notes include about 169 acres of land, and therefore a strip of land 53 varas wide is taken off of the north side of the land, and is decreed to the appellant. This strip contains 9 acres. Such being the case, we fail to find merit in appellant's first assignment of error, and the same is overruled.

[2] Appellant presents five propositions under the first assignment of error, each of which is substantially that, there being a break in the continuity of possession by Jones when Simmons lived on the land, the law governing limitation title is not complied with, and therefore the verdict and judgment are not supported. We do not think these propositions of law are germane to the assignment; but, if properly assigned, we do not think such assignment is supported by the record. The following special issues were submitted to the jury:

"Question No. 1: Have the plaintiffs and those under whom they claim had and held peaceable and adverse possession of the land described in plaintiffs' petition, cultivating, using, or enjoying the same, for a period of ten consecutive years prior to the year 1890?"

The jury answered this question: "Yes.".

"Question No. 2: What years, if any, have the plaintiffs and those under whom they claim had and held peaceable and adverse possession of the land described in plaintiffs' petition, cultivating, using, or enjoying the same, prior to the years 1890?"

The jury answered this question: "1866, 1867, 1868, 1869, 1870, 1871, 1872, 1873, 1874, 1875, 1876, 1877, 1878, 1879, 1880, 1881, and 1882."

These findings by the jury are supported by competent testimony, and, such being the case, this court will not disturb such findings.

[3] Appellant's second assignment is very lengthy; but it claims that the trial court committed error in permitting appellees' counsel to state to the jury that the statute of limitation was suspended in 1870; that appellant was entitled to an answer from the jury stating just what years the land was actually occupied by appellees.

There could be no vice in such statement to the jury unless the jury should, without warrant of testimony, or contrary to their own convictions, by a preponderance of the testimony, begin with the year 1870 and find such occupancy for a sufficient length of time to perfect the title under the pleas. There is testimony to justify the finding of such occupancy after the year 1870, and the jury did so find, for they say that he so occupied and held the land up to and including the year 1882; and there is nothing in this record to indicate any bias on the part of the jury, nor that such statement had any tendency to injure the appellant's rights before the jury. The second assignment is therefore overruled.

The third, fourth, and seventh assignments of error are to the effect that the verdict and judgment are contrary to the law and facts of this case: (1) Because the plaintiff did not enter under any claim of right; (2) because the great weight and preponderance of the testimony is in favor of the defendant. What we have said in our disposition of the first assignment of error is sufficient to dispose of these assignments, and they are each overruled.

[4] The fifth assignment complains of admission of Jim Pearson's testimony as deduced upon a former trial of this case. The record shows that Mr. Pearson was stricken with apoplexy a few days before this trial, and that at the time of the trial was in a precarious condition, and unable either to attend court or answer interrogatories. There is no indication that he was to be attacked as a witness by impeachment. He had testified and had been fully cross-examined by appellant's counsel upon the former trial of the case. There is abundant evidence to support the findings of the jury without his testimony, and there is nothing in the record to indicate that a different verdict would have been found had he been there and testified again in person. The fifth assignment is overruled.

[5] The sixth assignment complains of the following language used by counsel for appellees in his opening argument before the jury:

"Plaintiffs in this case could not scour the country to find witnesses as the defendant could. The defendant, being a corporation, could, and did scour the country for the purpose of finding witnesses willing to bolster up the claim which the defendant knew was not just."

The trial court·ruled that the statement was inproper, and withdrew it from the jury, and instructed the jury not to consider the argument. We think it very unlikely that any injury to appellant resulted from these remarks ·by counsel, and therefore the sixth assignment of error is overruled.

This disposes of all the assignments of error presented for our consideration, and the judgment of the lower court is affirmed.

### On Motion for Rehearing.

In the original opinion in this case we made a brief statement of the facts pertinent to the issues of limitation, some of which we quoted indirectly, and some of which we stated as facts, which we did not directly quote.

Counsel for appellant has filed motion requesting additional findings of fact, which ·motion we have granted, and we copy in full the additional facts suggested by counsel for appellant, as follows:

"Mrs. Herring testified: 'I have heard them speak about Mr. Simmons being there. I do not know whether my father put Mr. Simmons there or not, but I have heard him speak about his being there. I probably have heard him speak about making a trade with Mr. Simmons for the improvements, but I don't remember any particulars about it at all.'

"E. Biscamp testified: 'My father's name was Fred Biscamp. He is dead. He died in December, 1873. I remember about my father and Jones trading for some oxen. We owned the oxen when my father died, and I know how long we kept them, because we bought a little place on Clear creek, and we boys cultivated it in 1872 and used the oxen we had got from Jones. Mr. Jones got those oxen from old man Bill Simmons. Jones traded him that old place over there, the improvements, so they said. I don't know that they did that; that was the understanding that he let him have them in payment to buy the place. I think Bill Simmons moved on the place about the time Mr. Jones got the oxen, and he stayed there a little while and left. I think Simmons went on the place first, and then Mrs. Tade. I don't know how long it was after Simmons left before Mrs. Tade went there.'

"D. J. Lee testified: 'It don't really appear to me that Simmons lived there more than a month or two; a very short time, any way.'

"H. C. Jones testified: 'My father is mistaken when he says I lived on the place with my family continuously for a period of twelve years from the time I originally moved on it; then Mrs. Tade, an aunt of mine moved on the place and occupied the same as my tenant continuously for a period of about five years. It is not a fact that during the time Simmons lived on the N. H. Cochran league and occupied the improvements he bought from me, and that I was living elsewhere than on the N. H. Cochran league. It is not a fact that the improvements which I sold to the said Simmons were on the land in controversy in the suit filed against me in the federal court at Houston, in which judgment was rendered against me for* the land in controversy.'"

We have quoted in hæc verba the testimony òf these witnesses, as is set out in appellant's motion for additional findings of fact, out of deference to them. However, we think the brief statement of the facts made by us in the original opinion fairly presents every additional fact requested by the appellant.

In our original opinion we used the following language:

"A number of witnesses not related to the parties testified positively of Jones' occupation and tilling of the land up to 1882."

In appellant's motion for rehearing this statement is challenged by appellant's counsel as to the words "not related to the parties." Appellant asks that this part of the statement be corrected, because there was only one witness who so testified who was not related to some of the parties. There were a number of witnesses of different names who testified, and which is likely responsible for the clause "not related to the parties." We accept appellant's statement as true, without looking over the record, as to relationship, and now correct that paragraph in the original opinion, and make it read,

"A number of witnesses testified positively of Jones' occupation and tilling of the land up to and including 1882."

·Appellant's motion for rehearing presents nothing but what we have heretofore considered and passed upon, and we see no reason for change of our original opinion in this cause, and the motion for rehearing is therefore overruled.